# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 19-12430-WGY |
| EXXON MOBIL CORPORATION, ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OF LAW OF THE COMMONWEALTH OF MASSACHUSETTS IN SUPPORT OF ITS MOTION FOR REMAND TO THE MASSACHUSETTS SUPERIOR COURT FOR SUFFOLK COUNTY

MAURA HEALEY
ATTORNEY GENERAL

Richard A. Johnston, BBO No. 253420
*Chief Legal Counsel*
    richard.johnston@mass.gov
Melissa A. Hoffer, BBO No. 641667
*Chief, Energy and Environment Bureau*
    melissa.hoffer@mass.gov
Matthew Q. Berge, BBO No. 560319
*Senior Trial Counsel, Public Protection and
Advocacy Bureau*
    matthew.berge@mass.gov
James A. Sweeney, BBO No. 543636
*State Trial Counsel*
    jim.sweeney@mass.gov

OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200

Dated: December 26, 2019

*Additional counsel on signature page*

# TABLE OF CONTENTS

*Page*

Table of Authorities ........................................................................................................ ii

I.        Introduction ................................................................................................. 1

II.      Statement of Facts ....................................................................................... 4

     A.    The Attorney General's Authority Under Chapter 93A and Her
          Investigation of, and Litigation with, Exxon. ............................................ 4

     B.    The Attorney General's Complaint Against Exxon ................................... 6

III.     Argument ..................................................................................................... 7

    The Commonwealth's Complaint Does Not Raise Any Federal Claims, and
    Massachusetts State Courts Are the Appropriate Forum for Adjudicating the
    Commonwealth's Exclusively State Law Claims. ..................................................... 7

     A.    Exxon Has Failed to Meet Its Burden to Establish a Basis for Federal
          Subject Matter Jurisdiction That Would Justify Removal ......................... 7

     B.    The Complaint Alleges Only Violations of Massachusetts State Law, and
          There Are No Federal Issues Presented in the Complaint That Would
          Support *Grable* Jurisdiction ...................................................................... 8

          1.    No federal question is presented on the face of the Commonwealth's
              Complaint ......................................................................................... 8

          2.    *Grable* does not apply since the Complaint does not raise any federal
              issue necessary to the disposition of the Commonwealth's Chapter 93A
              claims. ............................................................................................ 11

     C.    The Commonwealth's Claims Do Not Arise Under Federal Common Law. ............ 16

     D.    There Is No Federal Officer Removal Because No Federal Officer Directed
          the Exxon Actions—Marketing and Sales of Exxon Products and
          Securities—At Issue in this Case ............................................................. 18

     E.    The Class Action Fairness Act Does Not Provide a Basis for Removal for
          this State Law Enforcement Action. .......................................................... 19

IV.     Conclusion ................................................................................................. 20

Certificate of Service ..................................................................................................... 21

# TABLE OF AUTHORITIES

*Pages*

**Cases**

*Almond v. Capital Props., Inc.*, 212 F.3d 20 (1st Cir. 2000) ......................................................... 11

*Alshrafi v. Am. Airlines*, 321 F. Supp. 2d 150 (D. Mass. 2004) .................................................. 10

*Am. Elec. Power Co. v. Connecticut,* 564 U.S. 410 (2011) .......................................................... 17

*Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) ...................................................................... 12

*Arizona v. Countrywide Fin. Corp.*, 665 F.3d 1165 (9th Cir. 2012) ............................................ 19

*Arizona v. Countrywide Fin. Corp.*, No. CV-11-131-PHX-FJM, 2011 WL 995963
(D. Ariz. 2011) ............................................................................................................................. 19

*Bd. of Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, No. 18-cv-
01672-WJM-SKC, 2019 WL 4200398 (D. Colo. Sept. 5, 2019) ....................................... 12, 14

*Bd. of Selectmen of Grafton v. Grafton & Upton R.R.*, No. 12-cv-40164-TSH,
2013 WL 2285913 (D. Mass. May 22, 2013) .............................................................................. 9

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) ................................................................. 15

*Bennett v. Sw. Airlines*, 484 F.3d 907 (7th Cir. 2007) .................................................................. 15

*Bryan v. BellSouth Comms., Inc.*, 377 F.3d 424 (4th Cir. 2004) ................................................. 14

*Cablevision of Boston Ltd. v. Flynn*, 710 F. Supp. 23 (D. Mass. 1989) .................................. 9, 10

*Cablevision of Boston Ltd. v. Flynn*, 889 F.2d 377 (1st Cir. 1989) ............................................. 10

*Callahan v. Sw. Airlines*, No. 18-10563-MGM, 2018 WL 5849476 (D. Mass.
2018) ............................................................................................................................................ 10

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ......................................................................... 7

*City of Oakland v. B.P. P.L.C.*, 325 F. Supp. 3d 1017 (2018) ..................................................... 12

*City of Worcester v. Purdue Pharma L.P.*, No. 18-11958-TSH (D. Mass. Nov. 21,
2018) ...................................................................................................................................... 10, 14

*Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ..................... 12, 14

*Commonwealth v. Chatham Dev. Co.*, 49 Mass. App. Ct. 525 (2000) ......................................... 20

*Commonwealth v. DeCotis*, 366 Mass. 234 (1974) ................................................................... 8, 15

*Commonwealth v. Philip Morris Inc.*, 942 F. Supp. 690 (D. Mass. 1996) .................................. 11

*Commonwealth v. V & M Mgmt., Inc.*, 752 F. Supp. 519 (D. Mass. 1990) ............................ 11

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..................................... 12

*Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1 (1st Cir. 1999) ............................ 7

*Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ................................ 14

*Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154 (3d Cir. 2013) ................................ 20

*Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312 (2018) ......................................... 2, 5, 14

*Exxon Mobil Corp. v. Healey*, 139 S. Ct. 794 (Jan. 7, 2019) .................................... 2, 5

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) .......................... 2, 5

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) ................................. 8

*Gens v. Resolution Trust Corp.*, 112 F.3d 569 (1st Cir. 1997) ..................................... 17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ....... 3, 11, 14, 15

*Gunn v. Minton*, 568 U.S. 251 (2013) .......................................................... 7

*Hamm v. Latessa*, 72 F.3d 947 (1st Cir. 1995) .................................................. 15

*Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621 (1978) ..................................... 15

*Hill v. BellSouth Telecomms. Inc.*, 364 F.3d 1308 (11th Cir. 2004) ................................ 14

*Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600 (2003) ....................... 9

*In re Civil Investigative Demand No. 2016-EPD-36*, No. SUCV20161888F, 2017
WL 627305 (Mass. Super. Jan. 11, 2017) .................................................... 2

*In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591 (S.D.N.Y. 2011) ......................... 19

*In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 65 (D. Mass.
2006) ..................................................................................... 7, 10

*In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378 (S.D.N.Y.
2014) ..................................................................................... 8

*In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654 (E.D. La. 2012) ......................... 19

*Kokkonen v. Guardian Life Ins.*, 511 U.S. 375 (1994) .......................................... 7

*LG Display Co. v. Madigan*, 665 F.3d 768 (7th Cir. 2011) .............................................. 16, 19, 20

*Massachusetts v. DMB Fin., LLC,* No. 18-cv-11120-ADB, 2018 WL 6199566 (D. Mass. 2018) ............................................................................................................................ 8

*Massachusetts v. Fremont Inv. & Loans*, No. 07-11965-GAO, 2007 WL 4571162 (D. Mass. 2007) ............................................................................................................ 10

*Mayor and City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ......................................................................................................... 9, 12, 13, 14

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) .................................................... 11

*Mississippi v. AU Optronics Corp.*, 571 U.S. 161 (2014) .......................................................... 19

*Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8 (1st Cir. 2013) ............................................................................................ 14, 15

*Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012) ......................... 16

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) ....................................... 8, 16, 19, 20

*New Hampshire v. Purdue Pharma*, No. 17-cv-427-PB, 2018 WL 333824 (D.N.H. Jan. 9, 2018) ................................................................................................ 20

*New York v. Exxon Mobil Corp.*, Index No. 452044/2018, 2019 N.Y. Slip Op. 51990(U), 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019) ................................................... 6

*Pitts v. Bank of Am. Corp.*, No. 2:10-cv-1463, 2010 WL 5441678 (W.D. Pa. Dec. 28, 2010) ......................................................................................................................... 9

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013) ............................................ 19, 20

*Purity Supreme, Inc. v. Att'y Gen.*, 380 Mass. 762 (1980) .............................................................. 4

*Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ...................................... 12, 13

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) ........................................................................ 9

*Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1 (1st Cir. 2004) ........................................... 2, 7

*Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline, L.L.C..*, 850 F.3d 714 (5th Cir. 2017) ....................................................................................................................... 14

*Sec'y of Commonwealth v. Scottrade, Inc.*, 327 F. Supp. 3d 345 (D. Mass. 2018) ............... 10, 11

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ........................................................... 7

*South Carolina v. AU Optronics Corp.*, No. 3:11-cv-00731-JFA, 2011 WL 4344079 (D.S.C. 2011) ............................................................ 19

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) .................. 1

*Tr. of W. States Office & Prof'l Emps. Pension Fund v. BNY W. Trust Co.*, No. C 01-01879 WHA, 2001 WL 1382124 (N.D. Cal. Oct. 29, 2001) ............... 9

*United States v. Poole*, 531 F.3d 263 (4th Cir. 2008) ................................... 7

*Washington v. Chimei Innolux Corp.*, 659 F.3d 843 (9th Cir. 2011) ............ 19

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) .................................... 18

*West Virginia v. CVS Pharmacy, Inc.*, 646 F. 3d 169 (4th Cir. 2011) .............. 2, 19, 20

*West Virginia v. JP Morgan Chase & Co.*, 842 F. Supp. 2d 984 (S.D. W.Va. 2012) ....................................................................................... 19

*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921) ........................... 7

**Statutes**

15 U.S.C. § 57b(e) ................................................................................. 16

28 U.S.C. § 1442(a)(1) ............................................................................ 18

Mass. Gen. Laws ch. 93A, § 2 ........................................................... 14, 15

Mass. Gen. Laws ch. 93A, § 2(b) ........................................................... 15

Mass. Gen. Laws ch. 93A, § 2(c) ............................................................. 4

Mass. Gen. Laws ch. 93A, § 4 ............................................................. 1, 4

Mass. Gen. Laws ch. 93A, § 6(1) ............................................................. 4

**Regulations**

940 Code Mass. Regs. § 3.01 .................................................................... 4

940 Code Mass. Regs. § 3.05(1) .............................................................. 14

940 Code Mass. Regs. § 6.01 .................................................................... 4

# I. INTRODUCTION

The Court should remand this state-law case back to the Massachusetts Superior Court. Contrary to Exxon Mobil Corporation's ("Exxon" or the "Company") self-serving and distorted description of the Commonwealth's exclusively state-law-based complaint ("Complaint"), this case does not concern carbon taxes, prohibitions on the sales of gasoline, or international climate agreements. The Commonwealth's Complaint does not allege that Exxon has violated any environmental laws or caused a public nuisance, and it seeks no damages for the climate change harms caused by greenhouse gas emissions attributable to Exxon's operations and products.

Rather, as the Complaint plainly provides and Exxon knows, the Commonwealth's Attorney General brought this case under the Massachusetts Consumer Protection Act ("Chapter 93A"), Mass. Gen. Laws ch. 93A, § 4.[1] The Attorney General filed that case after a three and one-half year investigation of Exxon initiated in 2016—an investigation Exxon stonewalled and sought to quash, unsuccessfully, with scorched-earth litigation tactics every step of the way. Indeed, this removal is not even Exxon's first attempt to avoid Massachusetts state-court jurisdiction in this matter. After the Attorney General first issued a civil investigative demand ("CID") to Exxon in April 2016, Exxon challenged the CID not only in state court, but in federal court, as well—*in Texas*—where controlling Fifth Circuit precedent unambiguously held that federal courts lacked personal jurisdiction over state officials from another jurisdiction under such circumstances.[2]

At bottom, Exxon's argument for removal is that the Commonwealth has mispleaded its case, disguising as a state-law consumer and investor protection action what is actually a tort

---

[1] On December 2, 2019, the parties filed a joint motion to extend deadlines, which acknowledges in its first paragraph that this is an action by the Attorney General under Chapter 93A, only. Doc. No. 7.

[2] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482–89 (5th Cir. 2008).

claim for damages, or a case arising under federal common law, or a "class action"—whatever theory helps Exxon escape the Massachusetts state court forum. The law, including authoritative case law that Exxon omits from its removal notice (Doc. No. 1, "Notice"), forecloses Exxon's argument. In this regard, Exxon is following other failed corporate defendants in employing this gambit against state Attorney General actions, and this Court should reject Exxon's ploy, as the Fourth Circuit did when faced with a similar circumstance. Considering removal of a consumer protection action filed by the West Virginia Attorney General in state court, the Fourth Circuit rejected a similar argument that the Attorney General had "mispleaded" under state law what was acually a Class Action Fairness Act ("CAFA") class action and warned that, were the court to allow removal, it "would risk trampling on the sovereign dignity of the State and inappropriately transforming what is essentially a West Virginia matter into a federal case." *West Virginia v. CVS Pharmacy, Inc.*, 646 F. 3d 169, 178 (4th Cir. 2011).

This Court must ignore Exxon's factual allegations of conspiracy that it claims necessitate removal—unsupported innuendo, repeatedly rejected by federal and state courts in this matter, of a multistate cabal conspiring against it—because the removal determination must be made solely on what the Commonwealth pleaded within the four corners of the Complaint.[3] *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 10 (1st Cir. 2004). The Commonwealth's Complaint is focused only on violations of Chapter 93A arising from Exxon's misleading and deceptive statements and omissions in connection with the Company's marketing and sales of its fossil fuel products, specifically, its Synergy™ brand gasoline (all of the gasoline it sells in

---

[3] The Massachusetts Superior Court, the Supreme Judicial Court, and the United States District Court for the Southern District of New York already have dismissed these claims. *See In re Civil Investigative Demand No. 2016-EPD-36*, No. SUCV20161888F, 2017 WL 627305, *4–*6 (Mass. Super. Jan. 11, 2017*), aff'd sub nom. Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 324–28 (2018), *cert. denied*, 139 S. Ct. 794 (Jan. 7, 2019); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 705–12 (S.D.N.Y. 2018), *appeal pending sub nom. Exxon Mobil Corp. v. Healey*, No. 18-1170 (2d Cir.).

Massachusetts) and "green" Mobil 1™ motor oil, and Exxon securities. Exxon is, of course, free to sell its products and securities, and the Commonwealth does not seek to enjoin those activities. But Chapter 93A prohibits Exxon from deceiving Massachusetts consumers and investors in the course of its sales and marketing of its products and securities. It is Exxon's deception that the Commonwealth's action aims to halt, pursuant to Chapter 93A.

Exxon has completely failed to meet its substantial burden of proving that removal is proper. The Notice misrepresents the Commonwealth's detailed allegations, fails to cite controlling precedents, and recycles the same tired conspiracy theories regarding the Commonwealth's investigation that have been rejected by state and federal courts. And now, still clinging to its alternative facts and repeated recitals of implausible claims, Exxon advances implausible bases for removal that have no support in law or fact, since the claims in the Commonwealth's Complaint (1) allege only violations of a single Massachusetts state law; (2) do not require the disposition of any federal issue and therefore do not support *Grable* jurisdiction, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); (3) do not arise under federal common law; (4) involve no action by Exxon taken under the direction of a federal officer or agency; and (5) do not constitute a "class action" under CAFA, since no fewer than *four* federal courts of appeal and numerous district courts (none cited by Exxon) have held that CAFA does not apply to consumer protection actions brought by state Attorneys General.[4] This Court should remand this case.

---

[4] *See infra* Argument Pt. E (listing decisions). Exxon also fails to cite four recent federal district court decisions remanding state and municipal public nuisance claims against Exxon and other fossil fuel companies. *See infra* note 10.

## II. STATEMENT OF FACTS

### A. The Attorney General's Authority Under Chapter 93A and Her Investigation of, and Litigation with, Exxon.

The Massachusetts legislature provided exclusive authority to the Massachusetts Attorney General under Chapter 93A to investigate and initiate court proceedings to protect Massachusetts consumers and investors from deceptive and misleading practices. Mass. Gen. Laws ch. 93A, § 6(1) (authority to investigate and issue CIDs); *id*. at § 4 (authorizing Attorney General to "bring an action in the name of the commonwealth," against any person whom she determines has violated Chapter 93A). The Attorney General is also vested with authority to promulgate and enforce regulations implementing Chapter 93A. *Id*. at § 2(c); *Purity Supreme, Inc. v. Att'y Gen.*, 380 Mass. 762, 766 (1980). Those regulations define unfair and deceptive practices in, among other things, sales representations and retail advertising. 940 Code of Mass. Regs. (C.M.R.) §§ 3.01, 6.01.

In 2016, the Attorney General issued a CID to Exxon under Chapter 93A, seeking, *inter alia*, production of documents concerning the Company's climate change-related statements to consumers and investors regarding its products and securities. Seeking to halt the investigation and disqualify the Attorney General and her entire office for alleged bias, Exxon sued the Attorney General in Massachusetts Superior Court and filed a separate lawsuit in the U.S. District Court for the Northern District of Texas pursuant to 42 U.S.C. § 1983. Among Exxon's claims in both cases was that the CID was tainted by a multistate conspiracy to infringe the Company's constitutional rights, including to free speech.

The Superior Court upheld the Attorney General's authority to issue the CID and ordered Exxon to comply with it; Exxon appealed, and the Massachusetts Supreme Judicial Court affirmed the Superior Court's decision. In its decision, the Supreme Judicial Court rejected

Exxon's objections to the CID, holding that the Attorney General had the authority to initiate her investigation and a "manifest interest in enforcing [Chapter] 93A," which "prohibits deceptive advertising to consumers . . . and also requires honest disclosures in transactions between businesses." *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 323 (2018) , *cert. denied*, 139 S. Ct. 794 (Jan. 7, 2019) (citation omitted).

To the south, following months of motion practice and the Attorney General's Fifth Circuit mandamus petition raising the Texas district court's utter lack of personal jurisdiction, Exxon's federal action in Texas ultimately was transferred to the Southern District of New York. That court, like the Massachusetts Superior Court and Supreme Judicial Court, found Exxon's claims implausible, and granted the Commonwealth's motion to dismiss. In its decision, the court held that the Company had failed to state a claim, that its request for "extraordinary" relief was based on "extremely thin allegations and speculative inferences," and that Exxon's lawsuit against the Attorney General was barred by *res judicata*. *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 686–87, 701–04 (S.D.N.Y. 2018) (Caproni, J.), *appeal pending sub nom. Exxon Mobil Corp. v. Healey*, No. 18-1170 (2d Cir.).

During the years of litigation regarding the CID, the Attorney General continued her investigation through other means. On October 24, 2019, the Attorney General filed her Chapter 93A suit against Exxon in Superior Court. On November 29, 2019, Exxon removed the Complaint to this Court pursuant to 28 U.S.C. § 1441, asserting that the Commonwealth's straightforward Chapter 93A claims raise assorted federal issues that warrant this Court's exercise of federal question jurisdiction under 28 U.S.C. § 1331. Because they do not, the Commonwealth now moves to remand the Complaint to Massachusetts Superior Court pursuant to 28 U.S.C. § 1447(c).

**B.    The Attorney General's Complaint Against Exxon.**

The Complaint includes four causes of action alleging violations of both Chapter 93A and its regulations. *See* Compl. ¶¶ 768–830. The First and Second Causes of Action relate to Exxon's investor deception—Exxon's material misrepresentations and failures to disclose material facts regarding systemic financial risk to Exxon's business posed by climate change, *id.* at ¶¶ 781–93 (First Cause of Action), and Exxon's use of a so-called "proxy cost of carbon" to account for climate-driven risk to its business, *id.* at ¶¶ 794–806 (Second Cause of Action).[5] The Third and Fourth Causes of Action relate to Exxon's consumer deception—Exxon's material misrepresentations and failures to disclose material facts to Massachusetts consumers regarding the adverse environmental impacts of its Synergy™ brand gasoline and "green" Mobil 1™ motor oil, *id.* at ¶¶ 807–20 (Third Cause of Action), and Exxon's misleading greenwashing campaigns to promote its corporate image and products as environmentally beneficial and climate protective, when in fact Exxon's products and operations are a substantial cause of harmful climate change, *id.* at ¶¶ 821–30 (Fourth Cause of Action)).

The Complaint seeks injunctive relief against further false and misleading statements to Massachusetts consumers and investors, as well as penalties under Chapter 93A. *Id.* at 204–05. It does not seek restitution on behalf of any consumers or investors. The Commonwealth's Complaint does not include any federal claims. Nor, unlike certain other suits by governmental entities against Exxon and other fossil fuel companies, does it include a state law public nuisance

---

[5] Exxon recently prevailed at trial in an action brought against it in state court by the New York Attorney General under the state Martin Act—a case Exxon did not seek to remove—alleging that Exxon's misrepresentations regarding its application of the proxy cost of carbon were deceptive. *See New York v. Exxon Mobil Corp.*, Index No. 452044/2018, 2019 N.Y. Slip Op. 51990(U), 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019).

or other tort claim that seeks to stop Exxon from selling fossil fuel products or to obtain damages for climate change harm caused by emissions from such products.

## III.  ARGUMENT

**THE COMMONWEALTH'S COMPLAINT DOES NOT RAISE ANY FEDERAL CLAIMS, AND MASSACHUSETTS STATE COURTS ARE THE APPROPRIATE FORUM FOR ADJUDICATING THE COMMONWEALTH'S EXCLUSIVELY STATE LAW CLAIMS.**

### A.  Exxon Has Failed to Meet Its Burden to Establish a Basis for Federal Subject Matter Jurisdiction That Would Justify Removal.

The cardinal "well-pleaded complaint rule" makes the plaintiff "the master of [its] claim" because, in drafting the complaint, the plaintiff may choose to "avoid federal jurisdiction by exclusive reliance on state law," which the Commonwealth did here. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As the party seeking removal, Exxon bears the burden of proving, notwithstanding this rule, that this Court has original jurisdiction over the claims in the Complaint. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

Courts construe the removal statute narrowly and against the party seeking removal. *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 65, 70 (D. Mass. 2006) (citing *Danca,* 185 F.3d at 4). As a court of limited jurisdiction, a federal court must presume that a case lies outside its jurisdiction unless and until jurisdiction has been shown to be proper. *See Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994)); *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008). Accordingly, "any ambiguity as to the source of law relied upon by the . . . plaintiff[] ought to be resolved against removal." *Rossello-Gonzalez*, 398 F.3d at 11 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). The bar against removal is even higher where the matter is an action brought by a state exercising its sovereign authority to enforce its own laws. *Franchise Tax Bd. v. Constr.*

*Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012); *Massachusetts v. DMB Fin., LLC,* No. 18-cv-11120-ADB, 2018 WL 6199566, at *5 (D. Mass. 2018) (citing *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014) (citations omitted)). As discussed below, Exxon's removal arguments fail to overcome its heavy burden.

**B.      The Complaint Alleges Only Violations of Massachusetts State Law, and There Are No Federal Issues Presented in the Complaint That Would Support *Grable* Jurisdiction.**

Chapter 93A and its regulations are governed both by their texts and a robust body of Massachusetts case law applying them, which has been evolving through the state courts since the law's 1967 enactment. *Commonwealth v. DeCotis*, 366 Mass. 234, 242 (1974) (recognizing that state courts make determinations of what constitutes "unfair" and "deceptive" actions toward consumers under Chapter 93A on a case-by-case basis). No federal question is presented on the face of the Complaint, and no federal issue must be resolved in order to adjudicate the Commonwealth's claims.

**1.      No federal question is presented on the face of the Commonwealth's Complaint.**

The Complaint pleads only state-law Chapter 93A claims. In his recent order on the docket in this action, Judge Wolf correctly noted that the Commonwealth's case arises under Massachusetts, not federal, law:

> In the [Commonwealth's] Massachusetts Case, plaintiff alleges that Exxon has violated state consumer protection laws in selling its securities by failing to disclose properly to investors the risks posed by climate change and other facts, and in selling its products to consumers by failing to disclose, among other things, that its fossil fuel products are a leading cause of climate change . . . *[T]he Massachusetts Case is based on state consumer protection law*.

Order, Doc. No. 11, at 3 (Dec. 6, 2019) (returning case to clerk for random reassignment after Exxon erroneously designated it as "related," pursuant to L.R. 40.1(g)(4), to another pending case, *Conservation Law Foundation v. Exxon Mobil Corp.*, Civ. A. No. 16-11950-MLW) (emphasis added).[6]

Because, as Judge Wolf noted, the Commonwealth's Complaint presents no federal question, under the well-pleaded complaint rule, the Commonwealth's case should be remanded to state court. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). The Commonwealth's claims alleging that Exxon violated Chapter 93A by deceiving Massachusetts consumers and investors, like similar state tort law claims, are "quintessential state law claims." *Pitts v. Bank of Am. Corp.*, No. 2:10-cv-1463, 2010 WL 5441678, at *2 (W.D. Pa. Dec. 28, 2010); *Tr. of W. States Office & Prof'l Emps. Pension Fund v. BNY W. Trust Co.*, No. C 01-01879 WHA, 2001 WL 1382124, at *4 (N.D. Cal. Oct. 29, 2001).[7]

This Court routinely remands cases such as the Commonwealth's where none of the claims the plaintiff actually asserted in its well-pleaded complaint arise under federal law. *See, e.g.*, *Cablevision of Boston Ltd. v. Flynn*, 710 F. Supp. 23, 25 (D. Mass. 1989) (Young, J.), *aff'd*,

---

[6] The other case, over which Judge Wolf presides, concerns Exxon's alleged violations of a federal water discharge permit at its oil terminal in Everett in "discharging pollutants and in failing to consider the impacts of climate change in designing and maintaining" the facility. Doc. No. 11, at 2–3.

[7] The fact that Exxon may raise First Amendment or other federal defenses, Notice at 11, is irrelevant, since federal defenses are not a proper basis for removal. *Rivet*, 522 U.S. at 475 (quoting *Franchise Tax Bd.*, 463 U.S. at 14) ("a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case"); *Bd. of Selectmen of Grafton v. Grafton & Upton R.R.*, No. 12-cv-40164-TSH, 2013 WL 2285913, at *5 (D. Mass. May 22, 2013) ("It is well settled that the mere specter of an affirmative defense under preemption or even the fact that a defendant might prevail on such a claim are inadequate grounds for removal."). It is not enough that "federal law becomes relevant by way of defense to an obligation created entirely under state law." *Mayor and City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 558 (D. Md. 2019), *appeal filed* No. 19-1644 (4th Cir. June 18, 2019) (quoting *Franchise Tax Bd.*, 463 U.S. at 13). In any event, First Amendment protections do not extend to false and misleading speech. *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612 (2003).

889 F.2d 377 (1st Cir. 1989) (noting, in ordering remand, that "federal courts are hesitant to assert jurisdiction merely because of a federal issue in a state-created cause of action, even when the federal issue is outcome determinative").[8] Recently, this Court remanded a Chapter 93A complaint against opioid manufacturers with allegations similar to those in this case. *City of Worcester v. Purdue Pharma L.P.*, No. 18-11958-TSH, Docket No. 36, slip op. at 7–8 (D. Mass. Nov. 21, 2018) ("*Worcester*"). There, *Worcester* alleged, among other things, that the defendant opioid manufacturers had violated Chapter 93A and committed common law fraud, misrepresentation, and negligence by making false and misleading statements about the safety of their products, which ultimately caused the city damages. This Court ordered remand, despite Worcester's allegation that the defendants' violation of the *federal* Controlled Substances Act provided evidence of common law negligence. *Id.* The Court determined that proving a violation of federal law was not necessary for the city to prevail on its Chapter 93A and common law tort claims. *Id.*

The argument for remand is even stronger here where, unlike in *Worcester*, the Commonwealth's Complaint does not allege *any* violation of federal law as a basis for Chapter 93A liability. *See Cablevision of Boston Ltd.*, 710 F. Supp. at 25–26; *see also Sec'y of Commonwealth v. Scottrade, Inc.*, 327 F. Supp. 3d 345, 350–58 (D. Mass. 2018) (remanding administrative proceeding enforcing Massachusetts securities' law that did not require resolution

---

[8] *See also Callahan v. Sw. Airlines*, No. 18-10563-MGM, 2018 WL 5849476, at *6–*8 (D. Mass. 2018) (remanding state negligence claim despite allegation that airline's conduct violated federal law); *Massachusetts v. Fremont Inv. & Loans*, No. 07-11965-GAO, 2007 WL 4571162, at *3 (D. Mass. 2007) (remanding Chapter 93A consumer protection claims for equitable relief despite potential preemption); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d at 73–74 (in multi-district litigation, remanding Florida's claims under state false claims act because determination whether defendants submitted inflated "Average Wholesale Prices" under Florida Medicaid statute did not raise federal issue); *Alshrafi v. Am. Airlines*, 321 F. Supp. 2d 150, 165 (D. Mass. 2004) (issue of whether airline violated federal law insufficient to confer federal subject matter jurisdiction).

of issue raised by defendant under Employee Retirement Income Security Act ("ERISA") and Internal Revenue Code); *Commonwealth v. Philip Morris Inc.*, 942 F. Supp. 690, 694 (D. Mass. 1996) ("federal jurisdiction cannot be justified on the premise that the state-defined liability claims are 'really' federal claims, as if when the state mask were peeled away the federal identity would be discovered").[9] Because the Complaint alleges only violations of Chapter 93A, a Massachusetts state law, this Court should remand this case to the Massachusetts Superior Court.

> ### 2. *Grable* does not apply since the Complaint does not raise any federal issue necessary to the disposition of the Commonwealth's Chapter 93A claims.

*Grable* provides a limited exception to the well-pleaded complaint rule, permitting federal courts to exercise subject matter jurisdiction when a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S. at 313–14. Federal courts apply the *Grable* exception sparingly. *Scottrade*, 327 F. Supp. 3d at 351 (citing *Almond v. Capital Props., Inc.*, 212 F.3d 20, 23 (1st Cir. 2000)); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (courts are to be cautious in exercising jurisdiction where federal issue is raised by a state law claim because such jurisdiction lies at "the outer reaches of [original jurisdiction under] § 1331").

Though Exxon appears to rely on *Grable,* it fails to express any particular, substantial federal issue that is actually disputed in this matter.[10] Instead, Exxon makes generalized

---

[9] This Court has also noted that, where it is "faced with a complaint, alleging solely a violation of Chapter 93A . . . it would be disposed to remand the case to the Superior Court for adjudication." *Commonwealth v. V & M Mgmt., Inc.*, 752 F. Supp. 519, 521 (D. Mass. 1990). In *V & M*, unlike here, the Commonwealth had "inartfully" pleaded five independent and expressly *federal* causes of action *under* federal statutes, which arguably supported removal. *Id.* at 521–22.

[10] Within the past two years, four district courts ignored in Exxon's Notice have rejected similar removal attempts, including reliance on *Grable*, by Exxon and its co-defendants in suits by other

references to energy and climate change policy articulated in international treaties and the federal carbon pollution standards for power plants. Notice at 8–10.[11] None of those policies is implicated by and no determination of federal law need be made in the Commonwealth's action, however, since this case is about Exxon's marketing and sales misrepresentations about its products and securities to Massachusetts consumers and investors. Similarly, Exxon alleges that the Commonwealth's Complaint requires resolution of certain fact issues that, Exxon vaguely asserts, present federal interests. For example, Exxon claims that a court would need to "determine whether 'substantially curtailing the use of fossil fuels is necessary to stabilize the increase in global average temperature and reduce the risk of catastrophic climate change.'" *Id.* at 9. The Court need not reach that issue in this case, or any of Exxon's other vague assertions of federal interests.

The Commonwealth's Chapter 93A claims "are thoroughly state-law claims. . . . The rights, duties, and rules of decision implicated by the complaint are all supplied by state law, without reference to anything federal." *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 151

---

governmental entities seeking to obtain, unlike the Commonwealth's Chapter 93A claims here, damages through public nuisance and other tort claims to compensate for the harmful effects of greenhouse gas emissions. *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *appeal filed sub nom. Cnty. of Marin v. Chevron Corp.*, No. 18-15503 (9th Cir. Mar. 27, 2018); *Baltimore, supra*; *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *appeal filed sub nom. Rhode Island v. Shell Oil Prods. Co.*, No. 19-1818 (Aug. 9, 2019); *Bd. of Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, No. 18-cv-01672-WJM-SKC, 2019 WL 4200398 (D. Colo. Sept. 5, 2019), *appeal filed*, No. 19-1330 (10th. Cir. Sept. 9, 2019).

[11] The cases cited by Exxon do not support removal. *Crosby* held that a Massachusetts law restricting state agencies' authority to make purchases from companies doing business in Burma—challenged on the grounds that it interfered with the federal foreign affairs power, the foreign commerce clause, and a federal statute—was preempted under conflict preemption by the federal Burma sanctions law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 385 (2000). *American Insurance Ass'n v. Garamendi*, 539 U.S. 396 (2003), involved preemption of a state statute requiring certain disclosures of Holocaust-era insurance policies. The existence of a federal defense, however, as set forth above, is not a basis for removal. *See supra* note 7. The third case upon which Exxon relies, *City of Oakland v. B.P. P.L.C.*, 325 F. Supp. 3d 1017 (2018), was not a removal decision at all, but rather a determination as to the extent to which federal common law should govern a public nuisance claim at issue in that case. The Commonwealth does not assert a public nuisance claim here.

(D.R.I. 2019), *appeal filed sub nom. Rhode Island v. Shell Oil Prods. Co.*, No. 19-1818 (Aug. 9, 2019) (remanding case against Exxon and other fossil fuel companies where state asserted statutory and common law claims under Rhode Island law). The mere existence of a federal interest is not enough. *See Mayor and City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 561 (D. Md. 2019), *appeal filed* No. 19-1644 (4th Cir. June 18, 2019) (remanding city's public nuisance claims against Exxon and other oil companies and ruling that "[t]o be sure, there are federal *interests* in addressing climate change," but "[d]efendants have failed to establish, however, that a federal *issue* is a 'necessary element' of the City's state law claims").

Additionally, Exxon's hyperbolic assertion that the Commonwealth's Complaint seeks to "hold a single fossil fuel manufacturer responsible for the alleged impacts of global climate change," Notice at 7, misrepresents the allegations in the Commonwealth's Complaint to secure its preferred forum. The Commonwealth's suit involves no tort claims, seeks no damages, asserts no violation of federal law (environmental or otherwise), and does not implicate any federal or legislative policy. Rather, like states' efforts to ensure that the tobacco industry stopped misleading and deceiving consumers about the dangers of using tobacco products, the Commonwealth seeks to ensure that Exxon's advertising and promotional materials for its fossil fuel products, as well as the representations the Company makes to Massachusetts investors about the climate-driven risks associated with the sales of its securities, are not false and misleading and do not include deceptive omissions. *See* Compl. ¶¶ 781–93 (First Cause of Action); ¶¶ 794–806 (Second Cause of Action); ¶¶ 807–20 (Third Cause of Action); ¶¶ 821–30 (Fourth Cause of Action). Under Chapter 93A, Exxon faces liability if its statements or omissions occurred in the course of trade or commerce in the Commonwealth and had the

"capacity or tendency" to mislead Massachusetts consumers or investors. Mass. Gen. Laws ch. 93A, § 2; 940 C.M.R. § 3.05(1); *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. at 320 & n.7.

Because these claims do not "necessarily raise" a federal issue, Exxon has failed to establish the first of the three *Grable* factors, and the Court's inquiry should end in favor of remand. *Worcester*, slip. op. at 5, 8; *Baltimore*, 388 F. Supp. 3d at 561.

Even if Exxon's references to federal climate policy were sufficient to establish the presence of a federal issue—and they are not—such issues are not "substantial" for *Grable* purposes. 545 U.S. at 313–14.[12] Exxon failed even to attempt to demonstrate, as *Grable* requires, that (i) the outcome of the Commonwealth's case could turn on a new interpretation of purely federal law that will have broad application; or (ii) resolution of the issue has broader significance for the federal government, *e.g.*, challenges to federal government action. *Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (citing *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)).[13] Neither condition is present here.[14] Indeed, the fact that a case may arise in a context

---

[12] *San Mateo*, 294 F. Supp. 3d at 938 ("gesture to federal law and federal concerns in a generalized way" does "not raise the kind of actually disputed, substantial federal issue necessary for *Grable* jurisdiction"); *Boulder*, 2019 WL 4200398, at *10 (remanding case to state court where Exxon and its co-defendants "point[ed] to no specific foreign policy that is essential to resolving the Plaintiffs' claims.").

[13] Indeed, the cases cited by Exxon on this point offer no support for its argument. In *Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline, L.L.C..*, 850 F.3d 714, 721–26 (5th Cir. 2017), a tort action, removal was proper because the extent of a mineral protection company's duty to restore land under state law was determined by federal statutes. Similarly, in *Bryan v. BellSouth Communications., Inc.*, 377 F.3d 424, 431–32 (4th Cir. 2004), and *Hill v. BellSouth Telecommunications. Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004), removal was proper because the question whether certain telecommunication charges were proper under state unfair trade practices law (or were the basis for a state law tort claim) required determination of the propriety of certain charges, known as tariffs, under federal law. No such particular issue of federal law is present here.

[14] To the extent Exxon's misleading and overwrought assertion that the Commonwealth's Complaint "constitutes a collateral attack," Notice at 10, on some unspecified federal regulatory scheme amounts to an argument that the Commonwealth's claims are completely preempted, Exxon is wrong. The second exception to the well-pleaded complaint rule, "complete preemption," occurs only in those very rare instances where Congress has expressed an intent to displace state law and provide an exclusive federal

in which there is also federal law and policies does not provide a lawful basis for removal, either. *Bennett v. Sw. Airlines*, 484 F.3d 907, 912 (7th Cir. 2007) (national regulation of many aspects of air travel does not mean that tort claim in wake of airline crash "arises under" federal law for purposes of removal).

Unlike *Grable*, where the state law question turned on a "pure" legal interpretation of a federal Internal Revenue Service regulation, adjudication of the Commonwealth's Chapter 93A claims will not rely on *any* interpretation of federal law, let alone a "pure" one. Rather, the Commonwealth's claims will be decided based on fact- and context-specific determinations as to whether Exxon's statements and omissions to Massachusetts consumers and investors were deceptive and misleading within the ambit of Chapter 93A and its implementing regulations. *DeCotis*, 366 Mass. at 242.[15]

And, the Commonwealth's Complaint neither raises any issue of any significance for the federal government nor challenges the propriety of the federal government's actions. Even in cases involving state law contract claims for violations of federal agency regulations, federal courts have found no substantial federal interest, declining to exercise jurisdiction. *Mayagüez*, 726 F.3d at 14–15 (breach of contract claim based on alleged failure to comply with federal

---

cause of action. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8–9 (2003) (holding that, for complete preemption purposes, only the Labor Management Relations Act, ERISA, and the National Bank Act expressly preempt state law entirely).

[15] While Chapter 93A provides that state courts, in making their own determination as to the meaning of "unfair and deceptive acts and practices," may be guided by federal interpretation of unfair and deceptive practices under the Federal Trade Commission Act, Mass Gen. Laws ch. 93A, § 2(b), simply using federal law as a guide is insufficient for *Grable* jurisdiction. The interpretation of the state law's terms remains a matter for state court determination. *Hamm v. Latessa*, 72 F.3d 947, 954 (1st Cir. 1995) ("Whether [a] state statute[] shall be construed one way or another is a state question, the final decision of which rests with the courts of the State" (citation omitted).). While permitted to use federal interpretations as a guide, Massachusetts courts are not bound by them. Mass. Gen. Laws ch. 93A, § 2; *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978) ("the existence of unfair or deceptive acts or practices must be determined in light of the policy surrounding [Chapter] 93A and from the circumstances inhering in each case")*; DeCotis*, 366 Mass. at 242 (courts make determinations of "unfair" and "deceptive" practices on case-by-case basis).

housing regulations did not raise substantial federal issues). The federal government has no direct interest in the outcome of the Commonwealth's claims that Exxon engaged in deception of Massachusetts consumers and investors—claims that exclusively involve state law and seek Chapter 93A statutory penalties and injunctive relief for Massachusetts consumers and investors.

Further, the Commonwealth has a strong sovereign interest in "securing an honest marketplace" through enforcement of its state consumer protection law in the Massachusetts courts. *Cf., e.g.*, *Nevada v. Bank of Am. Corp.*, 672 F.3d. 661, 671 (9th Cir. 2012). The exercise of federal jurisdiction here would therefore offend the important comity interest at stake. *See LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011) ("considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it" (quoting *Franchise Tax Bd. v. Construction Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983))). Additionally, permitting removal here would upset the balance between state and federal roles in the consumer protection arena, since Congress has clearly expressed its intent in the Federal Trade Commission Act that the states have an equal role in enforcement of consumer protection laws. 15 U.S.C. § 57b(e) ("Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law.").

Because Exxon has failed to meet its burden of establishing any substantial federal issue necessary to the adjudication of its Commonwealth's claims, the Court should decline to apply *Grable* and remand this case to the Massachusetts Superior Court.

### C. The Commonwealth's Claims Do Not Arise Under Federal Common Law.

Exxon also misses the mark in citing *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), and *American Electric Power Co. v. Connecticut* 564 U.S. 410

(2011) ("*AEP*"), to support its argument that removal is proper because the Commonwealth's claims arise under federal common law. Exxon's argument is particularly disingenuous, given that, in *Kivalina*, Exxon successfully argued, contrary to the position it now takes before this Court, that federal common law could *not* provide a rule of decision for the village's claims seeking tort damages (public nuisance) caused by Exxon's greenhouse gas pollution, since it was displaced by the federal Clean Air Act.[16] Indeed, *Kivalina* and *AEP*, cases decided close in time to one another, are often recognized as heralding the death of environmental federal common law. Yet Exxon now brashly attempts to avail itself of the very doctrine it fought to extinguish in *Kivalina*.[17] Despite that effort, Chapter 93A plainly provides the rule of decision here, and there is therefore no "void in the law" that requires resort to federal common law gap-filling.

As Exxon knows, federal common law governs matters of national concern, falling "within national legislative power where Congress has so directed or where the basic scheme of the Constitution so demands." *AEP*, 564 U.S. at 421 (citation and quotations omitted). "Absent a demonstrated need for a federal rule of decision, the Court has taken 'the prudent course' of 'adopt[ing] the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation.'" *Id*. at 422 (citation omitted). Again here, the Commonwealth's state statutory claims concern Exxon's false and deceptive representations to Massachusetts consumers and investors about its products and securities, not pollution abatement. Chapter 93A

---

[16] *See Gens v. Resolution Trust Corp.*, 112 F.3d 569, 572–73 (1st Cir. 1997) ("[W]here a party assumes a certain position in a legal proceeding, and *succeeds* in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . "(citation omitted).).

[17] *See, e.g.*, *Native Village of Kivalina et al. v. ExxonMobil Corp. et al.*, Answering Brief of Exxon et al., at 57, 9th Cir. No. 09-17490, Docket No. 70-1, 2010 WL 3299982 (June 30, 2010) ("type of 'uniquely federal interest' that gives rise to a federal common law claim 'exists *only* in such narrow areas as those concerned with [1] the rights and obligations of the United States, [2] interstate and international disputes implicating the conflicting rights of states or our relations with foreign nations, and [3] admiralty cases'") (citation omitted).

and the Massachusetts cases interpreting it constitute the readymade and controlling body of state law governing the Commonwealth's Complaint.

### D. There Is No Federal Officer Removal Because No Federal Officer Directed the Exxon Actions—Marketing and Sales of Exxon Products and Securities—At Issue in this Case.

Continuing its sleight-of-hand to convince the Court that the Commonwealth's consumer protection claims involve tort liability for Exxon's production of fossil fuel products, Notice at 13 & n.14, Exxon argues that the Company's leasing of federal lands for exploration, drilling, and production of fossil fuels, *id.* at 14, provides a basis for removal under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1) ("FORS"). Exxon's argument misrepresents the Commonwealth's 205-page Complaint detailing Exxon's false and misleading advertisements, promotional materials, and representations; the Exxon conduct at issue is the Company's materially false and misleading marketing and sales of Exxon products and securities, in violation of Chapter 93A. The Commonwealth's action is not "intended to hold [Exxon] singularly liable," Notice at 13, for producing fossil fuels. And, as with the very greenwashing and misrepresentations that are the subject of this action, Exxon's repeated incantation of a false narrative does not change the underlying truth that this is a state action aimed at protecting consumers and investors from Exxon's deceptive representations in the marketplace.

FORS permits removal only if Exxon, "in carrying out the 'act[s]' *that are the subject of the petitioner's complaint*, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (emphasis added). The Commonwealth's Complaint does not challenge Exxon's drilling activities or its development of oil and gas on federal lands. The Complaint has nothing to do with efforts to stop or reduce Exxon's production or sale of its fossil fuel products, as Exxon contends; there is simply no

nexus, causal or otherwise, between the Commonwealth's causes of action and any Exxon

conduct purportedly taken at the direction of federal officials.

For its part, Exxon does not claim, nor could it, that federal officers dictated the content

of Exxon's consumer ad buys, YouTube influence campaigns, or "roadshow" pitches to

Massachusetts institutional investors alluded to in the Complaint. FORS does not apply.

### E. The Class Action Fairness Act Does Not Provide a Basis for Removal for this State Law Enforcement Action.

Equally spurious is Exxon's argument that CAFA provides a basis for removal. No fewer

than *four* federal courts of appeal have held that consumer protection actions by state attorneys

general are not "class actions" subject to CAFA removal, yet Exxon did not cite a single one.

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216–17 (2d Cir. 2013); *Nevada*, 672 F.3d at 667

(9th Cir. 2012); *Washington v. Chimei Innolux Corp.*, 659 F.3d 843, 847–50 (9th Cir. 2011);

*West Virginia*, 646 F.3d at 176 (4th Cir. 2011); *LG Display Co.* , 665 F.3d at 771–72 (7th Cir.

2011).[18] These cases are dispositive and indistinguishable, which may explain Exxon's decision

to omit any mention of them from its CAFA argument.

The Second, Fourth, Seventh, and Ninth Circuits, and numerous district courts following

them,[19] have consistently held, over the course of the past decade, that since suits brought by

state attorneys general seeking relief under their respective state consumer protection and similar

---

[18] Nor, as the United States Supreme Court has held, is such an action a "mass action" subject to CAFA removal. *See Mississippi v. AU Optronics Corp.*, 571 U.S. 161, 172 (2014) (Mississippi Attorney General's consumer protection action seeking, inter alia, restitution for consumers was not a "mass action" subject to CAFA removal under 28 U.S.C. § 1332(d)(11)).

[19] *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 664 (E.D. La. 2012); *West Virginia v. JP Morgan Chase & Co.*, 842 F. Supp. 2d 984, 995–96 (S.D. W.Va. 2012); *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 602–03 (S.D.N.Y. 2011); *South Carolina v. AU Optronics Corp.*, No. 3:11-cv-00731-JFA, 2011 WL 4344079, *3-*7 (D.S.C. 2011); *Arizona v. Countrywide Fin. Corp.*, No. CV-11-131-PHX-FJM, 2011 WL 995963, *3 (D. Ariz. 2011), *appeal denied*, 665 F.3d 1165 (9th Cir. 2012).

statutes (*e.g.*, anti-trust) are not class actions, but *parens patriae* actions in the public interest, CAFA does not provide a basis for removal.[20] *West Virginia*, 646 F.3d at 179; *see Nevada*, 672 F.3d at 667; *LG Display Co.*, 665 F.3d at 772; *see New Hampshire v. Purdue Pharma*, No. 17-cv-427-PB, 2018 WL 333824, at *3 (D.N.H. Jan. 9, 2018) (summarily rejecting drug company's attempted CAFA removal of suit by New Hampshire Attorney General after collecting cases that repudiated removal positions akin to Exxon's here).

The Commonwealth's Complaint plainly falls within the category of *parens patriae* actions; a Chapter 93A claim requires none of the elements of a state or federal Rule 23 "class action"—numerosity, typicality, commonality, or notice to all members of a class. *Kentucky*, 704 F.3d at 216–17; *West Virginia*, 646 F.3d at 172.[21] There simply are no allegations in the Complaint that closely resemble the requirements for a class action, and "[n]o amount of piercing" the allegations of the Commonwealth's well pleaded complaint will change that fact. *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 160 (3d Cir. 2013). There is no basis for CAFA removal.

## IV.    CONCLUSION

For the foregoing reasons, the Commonwealth requests that this Court remand the Complaint to the Massachusetts Superior Court for Suffolk County.

---

[20] State laws, like Chapter 93A, targeted to protect state residents from "unfair and deceptive acts and practices," typically authorize state attorneys general to file suit "as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the individual interests of the State's citizens." *West Virginia*, 646 F.3d at 176.

[21] Exxon's reliance on a pre-CAFA case, *Commonwealth v. Chatham Development Co.*, 49 Mass. App. Ct. 525 (2000), which has nothing to do with federal jurisdiction, to attempt to demonstrate that the Commonwealth's case is a class action is misplaced. *Chatham Development* stands only for the proposition that the court's authority under Chapter 93A to order restitution is derived from the court's equitable authority to fashion a remedy to right the wrong. *Id.* at 528–29.

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS

By its attorneys,

MAURA HEALEY
ATTORNEY GENERAL

| | |
|---|---|
| | /s/ Christophe G. Courchesne |
| Christophe G. Courchesne, | Richard A. Johnston, BBO No. 253420 |
| BBO No. 660507 | *Chief Legal Counsel* |
| *Chief, Environmental Protection Division* | richard.johnston@mass.gov |
| christophe.courchesne@mass.gov | Melissa A. Hoffer, BBO No. 641667 |
| Glenn Kaplan, BBO No. 567308 | *Chief, Energy and Environment Bureau* |
| *Chief, Insurance and Financial Services* | melissa.hoffer@mass.gov |
| *Division* | Matthew Q. Berge, BBO No. 560319 |
| glenn.kaplan@mass.gov | *Senior Trial Counsel, Public Protection and* |
| Shennan Kavanagh, BBO No. 655174 | *Advocacy Bureau* |
| *Deputy Chief, Consumer Protection Division* | matthew.berge@mass.gov |
| shennan.kavanagh@mass.gov | James A. Sweeney, BBO No. 543636 |
| I. Andrew Goldberg, BBO No. 560843 | *State Trial Counsel* |
| andy.goldberg@mass.gov | jim.sweeney@mass.gov |
| Timothy Reppucci, BBO No. 678629 | |
| timothy.reppucci@mass.gov | |
| *Assistant Attorneys General* | |

Dated: December 26, 2019

OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200

**CERTIFICATE OF SERVICE**

I, Christophe G. Courchesne, certify that the foregoing document, which was filed on this day through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Christophe G. Courchesne
Christophe G. Courchesne