UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXXON MOBIL CORPORATION, )<br>)<br>Defendant. )<br>) | Civil Action No. 19-12430-WGY<br><br>*LEAVE TO FILE GRANTED BY ORDER DATED JANUARY 17, 2020* |

**REPLY OF THE COMMONWEALTH
OF MASSACHUSETTS IN SUPPORT OF ITS MOTION FOR REMAND**

The Commonwealth of Massachusetts seeks only to enforce its Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), to stop and penalize Exxon Mobil Corporation's ("Exxon") ongoing deceptive conduct in its sales and marketing of fossil fuel products to Massachusetts consumers and of its securities to Massachusetts investors. Through and through, this is a state law case that seeks to vindicate an important sovereign state interest. The Commonwealth's complaint belongs in the state court where it was filed.

There is no basis in law or fact for this Court to transmute the Commonwealth's claims, well-pleaded as pure Chapter 93A claims in its Complaint, into federal law claims of any kind, as Exxon disingenuously urges. For that reason, neither Exxon's removal notice (Doc. No. 1; "Notice") nor its remand opposition (Doc. No. 18; "Opp.") satisfy Exxon's heavy obligation to demonstrate otherwise.[1] As discussed in detail in the Commonwealth's memorandum of law in

---

[1] Nor is there any relevant point in Exxon's re-airing of its conspiracy theories, Opp. at 3–4—theories that the U.S. District Court for the Southern District of New York described as based on "wild stretch[es] of logic" and "pure speculation," *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp 3d 679, 689, 709 (S.D.N.Y. 2018), *appeal pending*, No. 18-1170 (2d Cir., filed Apr. 23, 2018). Following extensive briefing regarding Exxon's implausible allegations, that court and the Massachusetts courts rejected them. *See* Mem. at 2 & n.3; *see also* https://www.mass.gov/lists/attorney-generals-office-exxon-investigation

1

support of its remand motion (Doc. No. 14, "Mem."), none of Exxon's asserted grounds for federal jurisdiction—not *Grable* jurisdiction, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); not federal common law; not the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1) ("FORS"); and not the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA")—provide a basis for removal here. As the settled precedent described in the Commonwealth's opening memorandum dictates, this Court should enter an order remanding this case to state court. The Commonwealth provides this brief reply to Exxon's opposition to address Exxon's primary and deeply flawed characterization of the Commonwealth's state law causes of action in this case.

Exxon's central arguments falter immediately because they are all based on the same false and misleading premise—repeated *ad nauseum*—that the Commonwealth's claims seek "to stop [Exxon] from producing and selling fossil fuels." Opp. at 1. But Exxon knows that is not true—and acknowledges, as it must, that the Commonwealth's consumer claims in fact "relate to alleged consumer deception in connection with [Exxon's] sale of its fossil fuel products." *Id.* at 2.[2] Indeed, much like the suits by state attorneys general against tobacco companies that misled the public about the health risks of smoking, the Commonwealth's suit seeks, *inter alia*, to enjoin Exxon from making false and misleading representations in its sales and marketing materials to Massachusetts consumers and investors.

---

(compiling federal and state court filings in litigation regarding Commonwealth's civil investigative demand). Rather, the Court must determine here whether the *Commonwealth's* allegations about *Exxon's* violation of Chapter 93A provide a legitimate basis for removal in the face of the Commonwealth's prerogative as a sovereign state to pursue its state law claims in state court.

[2] Exxon presents virtually no argument that removal of the Commonwealth's investor claims is proper and has therefore effectively conceded that issue; indeed, Exxon's primary mention of the investor claims implies that, absent the consumer claims, removal of the investor claims would not be proper. *See* Opp. at 2 n.2.

When the Commonwealth's allegations and claims are read as the Commonwealth actually wrote them and not as contorted by Exxon in its desperate attempt to defeat remand, it is clear that the "federal issues" Exxon has concocted to trigger *Grable* jurisdiction[3] and support its arguments that the Complaint arises under federal common law and is subject to removal under FORS,[4] are bogus, and Exxon's case for removal jurisdiction necessarily collapses.

Undeterred by the actual allegations and claims in the Commonwealth's well-pleaded Complaint, Exxon reiterates its unsupported refrain throughout its remand opposition by mischaracterizing the outcomes sought in the Complaint.[5] Indeed, the Court will search the Complaint in vain for any support for Exxon's perverse account of the Commonwealth's

---

[3] In passing, Exxon implies that Chapter 93A's cross-reference to the Federal Trade Commission Act, Mass. Gen. Laws ch. 93A, § 2(b), means that the Commonwealth's Chapter 93A action necessarily raises federal issues. *See* Opp. at 12. But as the Supreme Judicial Court has observed, despite the cross-reference, Massachusetts courts are "only [to] be guided by, and [need] not strictly adhere to," analogous interpretations of that federal statute. *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004). Otherwise, Exxon does no more than gesture to vague foreign policy interests, Opp. at 7–8, totally failing to satisfy its burden to justify *Grable* removal.

[4] Exxon vaguely states, without ever saying what specific federal statute or federal common law would apply to the Commonwealth's claims, that this case, "is inextricably tied to uniquely federal interests involving foreign affairs, energy policy, and environmental regulation," Opp. at 6; "attempts to supplant delicate international negotiations regarding climate and energy policy," *id.* at 7; has "implications for federal energy, economic, and environmental regulatory policy," *id.* at 9; "sits at the intersection of federal energy and environmental regulations, while necessarily implicating foreign policy and national security considerations," *id.* at 10; "'would require that conduct subject to an extensive federal permitting scheme is in fact subject to implicit restraints that are created by state law,'" *id.*; is an "implicit and collateral attack on federal decisions regarding climate change," *id.* at n.11; "implicitly challenges" federal "policy issues and regulatory schemes," *id.* at 12 n.15; is "climate change litigation brought under the guise of state law . . . intended to have impacts on national and international polices," *id.* at 12; and "is . . . ultimately directed at stopping or reducing the actions federal leases obliged [Exxon] to pursue, namely the production and sale of fossil fuels," *id.* at 17.

[5] Exxon asserts that this case "is at least in part intended to cause a reduction in the use or sale of fossil fuels," Opp. at 2; "appear[s] to be aimed at reducing or stopping the sale of fossil fuel products," *id.* at 2 n.2; is "about … the fact that the products are manufactured and sold *at all*," *id.* at 7; "amounts to a demand that [Exxon] cease its production or sales of fossil fuel products," *id.*; reflects an "intent to compel [Exxon] to stop selling fossil fuels and mitigate the purported impacts of climate change," *id.* at 14; seeks "to address global effects caused by the production and global use of fossil fuels," *id.*; and "seek[s] to reduce or eliminate the sale of fossil fuel products," *id.* at 18. In service of this mischaracterization, Exxon pairs together clauses separated by more than 350 intervening paragraphs in the Commonwealth's Complaint. *Id.* at 6–7 (pairing clauses from paragraphs 245 and 600–02).

objectives. The Complaint seeks solely Chapter 93A remedies to stop and penalize Exxon's *deception*, classic if not "garden variety" (*id*. at 10) state consumer protection relief. *See, e.g.*, Compl. ¶ 43 (seeking "comprehensive equitable remedies *to stop ongoing investor and consumer deceptions* by ExxonMobil and substantial monetary penalties for past misconduct" (emphasis added)); *see also id.* at 204–05 (Complaint's request for relief). For this reason, this case does not require any court to adjudicate, as Exxon also falsely claims, the "appropriate use" of Exxon's fossil fuel products, Opp. at 1; whether "substantially curtailing the use of fossil fuels is necessary," *id.* at 8 (quoting allegation using verbiage from Exxon's own 1984 document, *see* Compl. ¶¶ 114, 811); "the careful balance Congress and federal agencies have struck between greenhouse gas regulation and the nation's energy needs," Opp. at 9; or whether "it is appropriate and safe to produce [and] sell … fossil fuels and determine what amount of greenhouse gas emissions are reasonable," *id.* at 14. Rather, in phrases Exxon misleadingly omits from its selective quotations, the Commonwealth actually alleges in its Complaint in relevant part that *Exxon had longstanding internal knowledge of certain climate change information* and that it made deceptive material misrepresentations and omissions regarding them in its communications with Massachusetts consumers and investors.[6] It is this deceptive advertising and marketing that the Commonwealth is seeking to stop, not the extraction, production, sale, or use of fossil fuels.

What Exxon is doing here is recycling, virtually wholesale, its flawed arguments against remand orders in certain removed state and municipal public nuisance lawsuits for climate-

---

[6] *See, e.g.*, Compl. ¶ 767 (cited in Opp. at 8, 11, 14) ("ExxonMobil's false and deceptive statements and omissions to Massachusetts investors and consumers are yet another means of avoiding the Company's reckoning with the clarion call of *the science the Company has long understood*" (emphasis added).); *id.* ¶ 811 (cited in Opp. at 8) ("*ExxonMobil also has had longstanding internal knowledge* that substantially curtailing the use of fossil fuels is necessary. . . " (emphasis added).).

change damages.[7] Those arguments failed, which Exxon neglected to tell this Court in its removal notice. Now, having been confronted with their existence, Exxon primarily relies on existing appeals of those defeats without acknowledging that, in any event, the appeals are in starkly different cases that implicate theories and relief that do not appear in the Commonwealth's consumer and investor protection-based Complaint.[8] While those cases also concern climate change and the conduct of fossil fuel companies, they differ from the Commonwealth's Chapter 93A action here—not least in the number and variety of causes of action, the misconduct alleged, and the requested remedies.[9] Exxon's argument ignores these

---

[7] At times, Exxon's removal notice and remand opposition contain descriptions of the Commonwealth's Complaint that, in addition to being wrong, seem lifted from Exxon's arguments in those cases. *See, e.g.*, Opp. at 13, 14 (case seeks "relief for the interstate impacts of global greenhouse gas emissions" and "to address global effects caused by the production and global use of fossil fuels"); Br. of Exxon et al., *Rhode Island v. Shell Oil Prods. Co.*, No. 19-1818 (1st Cir. Nov. 25, 2019) (asserting that, in state-law public nuisance case, plaintiff Rhode Island seeks "to use state law to resolve claims based on Defendants' worldwide extraction and production of fossil fuels, and on global greenhouse gas emissions" (at 14) and "to address the alleged effects of this worldwide phenomenon" (at 1)).

[8] Exxon is now appealing various district court orders remanding state-law public nuisance cases to state courts, including the District of Rhode Island's recent order in a public nuisance case filed by the State of Rhode Island in its state court. *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *appeal docketed sub nom. Rhode Island v. Shell Oil Prods. Co.*, No. 19-1818 (1st Cir. Aug. 9, 2019). The Commonwealth, along with several states, recently filed an amicus brief in that appeal in support of Rhode Island, explaining why removal by the fossil fuel company defendants, including Exxon, was improper and addressing the infirmity of the companies' arguments for federal jurisdiction, which are very similar to Exxon's here. Br. of Mass. et al. as Amici Curiae, *Rhode Island v. Shell Oil Prods. Co.*, No. 19-1818 (1st Cir. Jan. 2, 2020).

[9] And of course, as the amici states pointed out in the *Rhode Island* case (discussed in note 8, *supra*), states including Massachusetts have "a legitimate interest in combating the adverse effects of climate change on their residents," despite the global nature of the crisis, and Massachusetts has enacted numerous state statutes and policies to address it. *Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018); Br. of Mass. et al., *supra* note 8, at 3, 16–23. Those state statutes and policies are not at issue in this case. And climate change is but one of a wide variety of international and national problems harming Massachusetts residents, such as the subprime mortgage and opioid crises, that Commonwealth authorities have a long history of remedying under state laws and their police powers in state court, alongside distinct federal actions addressed to the same problems. *Id.* at 1–3.

obvious distinctions between this case and those public nuisance lawsuits. The Court thus should reject Exxon's inapt effort to defeat remand by mischaracterizing this case.[10]

For the reasons discussed above and in the Commonwealth's opening memorandum, removal was improper, and the Court should grant the Commonwealth's motion to remand this case to the Massachusetts Superior Court for Suffolk County.

---

[10] Exxon's distinct, threadbare CAFA-removal argument is wholly without merit. Indeed, the one case Exxon cites that involved a state attorney general as a plaintiff (Opp. at 20) does not advance its argument because the attorney general in that case did *not* pursue a state consumer protection act-based claim. *See In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 703 (5th Cir. 2008). Instead, "[t]he Attorney General of Louisiana [actually] filed a class action," *id.* at 702, and joined Louisiana citizens as plaintiffs, *id.* at 706. Thus, while that court did uphold removal due to the private plaintiff involvement, it expressly did not rule that removal would have been appropriate if the case had involved only a claim by the attorney general. *Id.* at 711–12. And, even then, the Fifth Circuit still instructed the district court on remand to consider "returning Louisiana to the state court while retaining the class suit" in light of Louisiana's strong sovereign interest in litigating its claims in its state courts. *Id.* at 712; *see also Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 849 n.2 (9th Cir. 2011) (analyzing *Katrina Canal*). Exxon's other CAFA cases are not on point. *See, e.g.*, *Addison Automatic, Inc. v. Hartford Cas. Ins.*, 731 F.3d 740, 744 (7th Cir. 2013) (distinguishing *parens patriae* state law enforcement actions from class actions subject to CAFA removal).

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS

By its attorneys,

MAURA HEALEY
ATTORNEY GENERAL

Christophe G. Courchesne,
BBO No. 660507
*Chief, Environmental Protection Division*
christophe.courchesne@mass.gov
Glenn Kaplan, BBO No. 567308
*Chief, Insurance and Financial Services Division*
glenn.kaplan@mass.gov
Shennan Kavanagh, BBO No. 655174
*Deputy Chief, Consumer Protection Division*
shennan.kavanagh@mass.gov
I. Andrew Goldberg, BBO No. 560843
andy.goldberg@mass.gov
Timothy Reppucci, BBO No. 678629
timothy.reppucci@mass.gov
*Assistant Attorneys General*

Dated: January 17, 2020

/s/ Christophe G. Courchesne
Richard A. Johnston, BBO No. 253420
*Chief Legal Counsel*
richard.johnston@mass.gov
Melissa A. Hoffer, BBO No. 641667
*Chief, Energy and Environment Bureau*
melissa.hoffer@mass.gov
Matthew Q. Berge, BBO No. 560319
*Senior Trial Counsel, Public Protection and Advocacy Bureau*
matthew.berge@mass.gov
James A. Sweeney, BBO No. 543636
*State Trial Counsel*
jim.sweeney@mass.gov

OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200

**CERTIFICATE OF SERVICE**

I, Christophe G. Courchesne, certify that the foregoing document, which was filed on this day through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Christophe G. Courchesne
Christophe G. Courchesne